In re William D. KITCHEN, Nellie M. Kitchen, Debtors.

William David KITCHEN, Nellie Marie Kitchen, Plaintiffs,

v.

MALMSTROM FEDERAL CREDIT UN-ION a/k/a First Liberty Federal Credit Union, Defendant.

Bankruptcy No. 481–00435.
Adv. No. 485/0033.

United States Bankruptcy Court,
D. Montana.

Sept. 8, 1986.

Patrick F. Flaherty, Great Falls, Mont., for debtors.

John H. Grant, Helena, Mont., for defendant.

John P. Paul, Great Falls, Mont., Trustee.

## ORDER

JOHN L. PETERSON, Bankruptcy Judge.

In this adversary proceeding, the Plaintiff Debtors seek a determination of the debt, if any, owed to the Defendant Malmstrom Federal Credit Union (Malmstrom). Hearing on said complaint and answer was held July 15, 1986, and the parties have now filed proposed Findings of Fact, Conclusions of Law and briefs in support of their respective position.

The Debtors filed their Chapter 13 Petition and Plan on September 21, 1981, amended on November 17, 1981. The Amended Plan listed Malmstrom as a secured creditor in the sum of $20,812.61, and proposed to sell a portion of its collateral consisting of a computer for $15,000.00 and pay the balance of the claim at $100.00 per month for 60 months. The Order Confirming the Plan, after objections filed by Malmstrom, provided that Malmstrom, as a secured creditor, would be paid $200.00 per month on the following conditions:

"1. The debtors sell the 1961 Corvair Station Wagon and shall pay from the net proceeds of said sale ⅓ to Malmstrom Federal Credit Union, the balance being distributed pro-rata to the other two secured credi-

tors, namely, Great Falls Federal Savings & Loan and Associated Finance.

2. The D88/50 M DEC Data System Computer shall be sold and the proceeds from same applied to the outstanding indebtedness at Malmstrom Federal Credit Union. In this respect, the Debtors shall not refuse a net offer of $8,000.00 or more.

3. That creditors trust indenture representing a third mortgage on the premises situated at 2201 Third Avenue North, shall be retained and in the event of default of the Debtors of this Plan shall have all rights of a secured creditor including the right of foreclosure.

4. That this Plan shall be reviewed 3 months from date to determine whether the Debtors are putting forth their best efforts to effectuate this aspect of the Plan."

The order further stated that Malmstrom consented to the Plan on the conditions set forth above. Post confirmation, on April 9, 1982, Malmstrom filed a motion to review the Plan, convert the case to Chapter 7, or order release of its collateral. Thereafter on May 11, 1982, the Debtors and Trustee consented to release of the automatic stay in the above described DEC Data System Computer. Such consent stated that Malmstrom would apply the proceeds of sale to the balance owed it. Malmstrom delayed until September 14, 1982, to take possession of the computer and has held it since such date without sale of the collateral. Further, on May 11, 1982, the Plan was modified by order of this Court to provide that the amount due Malmstrom under the Plan would be paid at $300.00 per month, effective July 10, 1982, "for the duration of the Plan", namely, October, 1986, (the original Plan being for 5 years in duration). Payments under the Plan to Malmstrom presently total $14,300.00, through January, 1986. By agreement of the parties, the Trustee has withheld payment to Malmstrom because of the present controversy. After the petition was filed, Malmstrom filed a Proof of Claim stating the total debt due Malmstrom as of October, 1981, was $20,812.61. There was no valuation made at the time of the confirmation hearing as to the value of Malmstrom's security interest.

The pre-petition debt of Malmstrom is based on a promissory note dated February 12, 1980, (due March 20, 1985) in the principal sum of $27,070.00, with interest at 12% per annum, secured by a first lien on a 1978 Chevrolet Suburban and the computer and a third lien on the Debtors' family residence. That sum was borrowed to finance the purchase of the computer. The additional security was taken to fully collateralize the loan.

The position of the Debtors in this proceeding is that Malmstrom was undersecured, and thus have now been overpaid under the Plan. Further the Debtors complain that Malmstrom, upon taking possession of the computer, has never credited the Debtors' account with any sum for its value. The latter fact is true, and Malmstrom now claims a balance owing of $18,673.11, despite having been paid $14,300.00 under the Plan and securing the right to possession of the computer in May, 1982. Most payments under the Plan have been charged to interest. Malmstrom contends it was fully secured as a creditor, and that its account should be paid in full irrespective of the Plan provisions. Both parties introduced evidence at the hearing concerning valuation of the collateral, which varied considerably. It is to be noted that the confirmed Plan not only provided for payments to Malmstrom of over $15,000.00, but also proceeds from the sale of the computer. Further, with respect to secured claims, each holder of such claim retained its lien securing the claim, and the value, as of the effective date of the Plan, of property distributed under the Plan, or property distributed under the Plan, was not less than the amount of such claim.

From reading the briefs of the parties, it is obvious both sides have failed to appreciate the effect of an order confirming a

Chapter 13 Plan. Section 1327 (11 U.S.C. 1327) of the Code provides:

"Section 1327. Effect of confirmation.

(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

(c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan."

The legislative history of Section 1327, together with case law dealing with its subject matter, makes clear that Subsection (a) binds the Debtor and each creditor to the provisions of the confirmed Plan, especially where the creditor has consented to the Plan, although such consent is not necessary. The matter has been addressed and settled in *Anaheim Savings and Loan Association v. Evans (In re Evans)*, 30 B.R. 530, 531–32, 9 C.B.C.2d 123 (BAP 9th Cir. 1983), which holds:

"Section 1327 is clear. The provisions of a confirmed plan bind each creditor whether or not such creditor has objected to, has accepted, or has rejected the plan. The plans in the present cases provided for the curing of defaults and for the maintenance of payments to the appellants throughout the life of the plan. An order confirming a Chapter 13 plan is res judicata to all justiciable issues which were or could have been decided at the confirmation hearing. See, *In re Lewis*, 8 B.R. 132, 137 (Bankr.D.Idaho 1981). Section 1327 precludes a creditor from asserting, after confirmation, any other interest than that provided for it in the confirmed plan. The issues of adequate protection, lack of equity, and necessity for a successful rehabilitation of the Chapter 13 debtor were all res judicata as of the confirmation of the plan. *Matter of Willey*, 24 B.R. 369 (Bankr.E.D. Mich.S.D.1982).

Other cases have discussed the binding effect of Section 1327 upon confirmation of a Chapter 13 plan. *In re Flick*, 14 B.R. 912 (Bankr.E.D.Pa.1981) [creditor bound by terms of confirmed plan whether or not he has objected to it]; *In re Moore*, 13 B.R. 914 (Bankr.D.Or.1981) [all issues of adequate protection, lack of equity, and necessity of the property to an effective reorganization of debtor's affairs could and should be raised at the confirmation hearing]; *Matter of Hackney*, 20 B.R. 158 (Bankr.D.Idaho 1982) [creditor bound by terms of plan once confirmed].

We see no reason to diverge from this line of cases. Nor have appellants advanced any compelling reason to do so. Section 1327 is clear and means what it says. It applied to each creditor, including those holding notes secured by deeds of trust on the debtor's principal place of residence. There is no foundation for appellants' argument that Section 1327 is somehow not applicable to them. In each case cited by appellants to support the proposition that creditors were entitled to relief from the automatic stay because of Section 362(d)(2), there were no confirmed Chapter 13 plans. Had there been, we believe that the results in those cases would have been different."

Further, on the issue of discharge after successful completion of the Plan, this circuit has held in the case of *In re Gregory*, 705 F.2d 1118, 1122 (9th Cir.1983), as follows:

"We agree with the conclusion of the bankruptcy appellate panel that the phrase 'provided for' in Section 1328(a) simply requires that for a claim to be dischargeable the plan must 'make a provision for' it, i.e., deal with it or refer to it. This construction seems reasonable, and Lawrence's efforts to support its construction of 'provided for' as meaning 'supplied a benefit' are not convincing."

We are not dealing in this case with voiding of Malmstrom's lien, as was present in the case of *In re Simmons*, 765 F.2d 547 (5th Cir.1985). Indeed, *Simmons*, following *In re Hartford*, 7 B.R. 914 (Bankr.D.Me.1981), holds (*ibid.* at 553):

"In particular, the court reasoned that '[S]ection 506(a), made applicable to Chapter 13 cases by section 103(a), requires as to each allowed secured claim, a valuation of the creditor's security in conjunction with a hearing on confirmation of the Chapter 13 plan'. Id. at 916 (emphasis in original). Further, Section 1325(a)(5) requires as one of the six prerequisites to confirmation of a Chapter 13 plan that with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, or property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claims to such holder * * * 11 U.S.C. Section 1325(a)(5) (emphasis added).

Hence, under Sections 506(a) and 1325(a)(5), a proof of secured claim must be acted upon—that is, allowed or disallowed—before confirmation of the plan or the claim must be deemed allowed for purposes of the plan. See 11 U.S.C. Section 502(a). We find this reasoning of the court in *In re Hartford* persuasive."

■ In the Order Confirming the Plan, the claim of Malmstrom was allowed as a secured claim, and the Plan specifically followed the requirements of 1325(a)(5) and 506(a). True, no valuation statement was presented, but none was necessary because Malmstrom retained its lien against the Debtors' collateral (some of which, the computer, was to be surrendered to Malmstrom) and Malmstrom consented to the payments of $200.00 (modified to $300.00) over the 5 year term of the Plan as final payment of its debt.

While this case presents a different twist that was present in *Gregory, Evans,* and *Simmons* in that the Debtor filed the complaint to test whether Malmstrom was undersecured, post-confirmation, the language dealing with the doctrine of res judicata is just as binding on the Debtor as it is on the creditor. The Debtors could have raised the valuation issue at the time of confirmation, and did not do so.

■ Further, I do not believe Section 1329 is available to the Debtors under the allegations made in their complaint. Section 1329 provides for modification of a confirmed Plan, after notice and hearing. But, as stated in 5 *Collier on Bankruptcy,* Section 1329.01, P. 1329–7 (15th Ed.):

"Of course, a post confirmation modification which changes the rights of the holder of an allowed secured claim provided for by the modified plan must either be accepted by the holder, relinquish the collateral to the holder, or contain a cram down provision meeting the requirements of Section 1325(a)(5)(B)."

None of the requirements for modification of the secured claim of Malmstrom are met by the Debtors, particularly 1325(a)(5)(B), which requires lien retention and payment of equivalent value. That is exactly what the original Plan as modified provided for with consent of Malmstrom. The real basis of the Debtors complaint is that Malmstrom has been overpaid on its claim, yet the deferred cash payments under the Plan provided present dollar value at the time of confirmation in 1982 equal to the amount of the secured claim. In other words, upon completion of payment of $300.00 per month to Malmstrom in October, 1986 (the 60th month of payment), Malmstrom's allowed secured claim will be paid in full, and thus its lien satisfied. See e.g., *In re Tucker*, 35 B.R. 35, 36 (Bankr.M.D.Tenn.1983):

"The resolution of the issues posed in this matter is controlled by 1327(a), which provides that a creditor is bound by the provisions of a confirmed Chapter 13 plan. The debtor's plan listed Ford's secured claim as $5,350.00 and provided the claim be paid in monthly installments of $160.00. The remaining unsecured portion of Ford's claim was to be paid in

456

full, along with all their unsecured claims, during approximately 41 months duration of these plans. The status and method for payment of Ford's claim was established at the debtor's confirmation hearing and, so long as the plans continue to be in effect, Ford is bound by the provisions pursuant to Section 1327(a). (Citing cases)."

In conclusion, Malmstrom was treated under the Plan as an allowed secured creditor, which retained its lien on the Debtors' property, aside from collateral to be surrendered to Malmstrom. Since all payments have been made under the Plan through June, 1986, together with collateral surrendered to Malmstrom, the only remaining payments due Malmstrom are for the months of July through October, 1986. Once such payments are made, the Debtors will have completed the Plan, and will be entitled to a discharge under Section 1328 of the Code. That discharge will include release of Malmstrom's lien against the automobile and family residence, since Malmstrom's claim will have been paid in full under the Plan.

IT IS ORDERED the complaint of the Debtors is dismissed.